**THE HARMAN FIRM, PC**
Attorneys & Counselors At Law
www.theharmanfirm.com

August 6, 2015

<u>Via ECF</u>

Hon. Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square, Room 415
New York, New York 10007

    Re:    **14 Civ. 9850 – *Umanzor v. NYPD* – Premotion Conference**

Dear Judge Broderick:

    We represent Plaintiff Randy Umanzor in the above-referenced action. Pursuant to Your Honor's Individual's Rules, we submit this letter to request a pre-motion conference related to Plaintiff's anticipated motion for partial summary judgment on the issue of liability.

### Factual Background

    In and around the Spring 2012, Mr. Umanzor, a native New Yorker from Flatbush, Brooklyn and presently twenty-four (24) years old, enrolled at John Jay College of Criminal Justice with the intention of graduating with a degree in Criminal Justice and applying to the NYPD police academy. In 2013, Mr. Umanzor was diagnosed with relapsing-remitting multiple sclerosis. Multiple sclerosis (MS) is a disease in which the immune system attacks the protective sheath that covers the body's nerves, disrupting communication between the brain and the rest of the body, and *may* result in nerve deterioration.[1] However, Mr. Umanzor has no nerve deterioration and otherwise functions as a normal, healthy, young man; he is expected to lead a long, healthy, and productive life.

    In and around February 2014, Mr. Umanzor applied for a "cadet" position with the NYPD. The program offers a competitive salary, generous tuition assistance, and a fast-track into the NYPD police academy. Upon successful completion of the program, cadets may take the officer exam. On or about April 8, 2014, as part of his application for the cadet position, Mr. Umanzor reported to the NYPD for a medical examination. After passing the physical examination, Mr. Umanzor filled out medical forms on which he disclosed that he had been diagnosed with MS. Upon reviewing Mr. Umanzor's medical forms, the NYPD requested that Mr. Umanzor provide medical documentation regarding his MS. Mr. Umanzor promptly did so, including a letter from his neurologist, Kristen Babinski, M.D., an MS specialist, stating that his MS would not interfere with his ability to perform the job activities of a cadet. Mr. Umanzor does not have any significant symptoms of MS, and certainly none whatsoever that could impact or impede his ability to perform the job activities of a cadet or police officer.

---

[1] *Multiple Sclerosis Definition*, MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, http://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/basics/definition/con-20026689 (last visited July 31, 2015).

1776 Broadway, Suite 2030
New York, New York 10019
T 212 425 2600 F 212 202 3926

      David Ira Lichtenstein, M.D.,[2] whom Plaintiff deposed as part of this action, reviewed Mr. Umanzor's medical forms. Dr. Lichtenstein disqualified Mr. Umanzor solely because Dr. Lichtenstein did not believe that enough time had elapsed between Mr. Umanzor's RRMS diagnosis and his application for the cadet program; Dr. Lichtenstein averred that he believed that an individual diagnosed with RRMS must be at least one (1) year without progressive symptoms for a doctor to state with some certainty that such an individual's MS will not develop into primary-progressive MS, or another type of disabling MS.[3] Dr. Lichtenstein erroneously[4] believed it had been less than one year between Mr. Umanzor's diagnosis and application; therefore on or about May 20, 2014, Mr. Umanzor received a notice of medical disqualification from NYPD, which summarily rejected him from the cadet program. The notice of medical disqualification cited only "Multiple Sclerosis" as the reason for his rejection. The NYPD never requested nor performed any additional exams on Mr. Umanzor and never assessed the symptoms, if any, of Mr. Umanzor's MS.

## There Is No Genuine Dispute as to Any Material Facts

      Summary judgment is warranted where the movant can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]

      The only material facts in this case are the reason for Mr. Umanzor's disqualification and whether Mr. Umanzor could have performed the essential function of a cadet or police officer at the time he applied for the position. Dr. Lichtenstein testified that he disqualified Mr. Umanzor because he did not believe that enough time had elapsed between Mr. Umanzor's MS diagnosis and his application for the cadet program. Dr. Lichtenstein further testified that at the time Mr. Umanzor applied for the cadet program, there was nothing in his medical record or doctor's note that would disqualify him; i.e., there was no reason to believe that Mr. Umanzor could not perform the job duties of a cadet or police officer. The parties do not dispute that a year had passed since the diagnosis and that Mr. Umanzor was only disqualified because of a belief that he might become disabled in the future. Consequently, there are no genuine disputes of any material facts.

## The NYPD Disqualified Mr. Umanzor Because of Illegal Disability Discrimination

      Mr. Umanzor brings claims under the Americans with Disabilities Act (ADA) and the New York City Human Rights Law (NYCHRL) for disability discrimination. Here, we only discuss the ADA claims because it is essentially the same approach as under the NYCHRL.

      Discrimination claims are analyzed using the *McDonnell Douglas* burden-shifting rubric whereby the plaintiff first makes a showing of a *prima facie* case of discrimination, then the defendant must show a legitimate, non-discriminatory reason for the adverse employment action.[6] To establish a *prima facie* case of discrimination, a plaintiff must show that: (i) his employer is subject to the ADA; (ii) he suffers from a disability within the meaning of the ADA; (iii) he could

---

[2] The NYPD only identified Dr. Lichtenstein as having information related to this action.
[3] Dr. Lichtenstein also testified that he is not an MS specialist and could not refer to any authority stating that one (1) year was an appropriate amount of time to monitor symptoms before concluding whether an MS patient would become disabled.
[4] In reality, twelve (12) months had passed between Mr. Umanzor's MS diagnosis and his application for the cadet program, and fourteen (14) months had passed between Mr. Umanzor's MS diagnosis and Dr. Lichtenstein's review of Mr. Umanzor's medical record and doctor's note.
[5] Fed. R. Civ. P. 56(a); *see Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("Summary judgment is appropriate even in discrimination cases, for, as this Court noted, 'the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'") (internal citations omitted).
[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973).

perform the essential functions of his job with or without reasonable accommodation; and (iv) he suffered an adverse employment action because of his disability.[7] Among other things, an individual is considered disabled if he has been regarded as having such an impairment.[8] "Regarded" as having such an impairment means an individual has a physical or mental impairment that does not substantially limit a major life activity but is treated by a covered entity as constituting such limitation.[9] Here, Mr. Umanzor satisfies the first element because the NYPD is a local government agency, subject to the ADA. He satisfies the second element because the NYPD regarded him as having a physical impairment, MS. He satisfies the third element because he is mentally and physically capable of performing the duties of a cadet and a police officer, as both Dr. Babinski and Dr. Lichtenstein stated. Finally, he satisfies the fourth element because the NYPD rejected his application because he was diagnosed with a type of MS.

Because Mr. Umanzor is able to present a *prima facie* case of discrimination, the NYPD must be able to provide a legitimate, non-discriminatory reason for rejecting his employment application to avoid liability. Defendant cannot provide such a reason. Dr. Lichtenstein's incontrovertible testimony was that he only disqualified Mr. Umanzor because he believed Mr. Umanzor had been diagnosed with MS within the last year; he further testified that Mr. Umanzor did not have any symptoms that would be grounds to disqualify him. Thus, Defendant cannot present a legitimate, non-discriminatory reason for refusing Mr. Umanzor employment; Dr. Lichtenstein's testimony is direct evidence of disability discrimination.

The case *Bayport-Blue Point School Dist. v. State Div. of Human Rights* is illustrative.[10] There, the school district's physician disqualified the plaintiff from driving a school bus because she had been diagnosed with MS.[11] The plaintiff's neurologist testified that the plaintiff was fully capable of driving a school bus despite the MS diagnosis because the symptoms of MS come on gradually.[12] The court agreed with the plaintiff, concluding that the plaintiff was unlawfully discriminated against because MS did not prevent the plaintiff from performing her job duties.[13] Here, Dr. Lichtenstein testified that Mr. Umanzor did not have any symptoms that would prevent him from performing the job duties of a cadet or police officer; Dr. Lichtenstein testified that he disqualified Mr. Umanzor solely because he had been diagnosed with MS.

In sum, there are no genuine disputes of material facts; the NYPD disqualified Mr. Umanzor because he had been diagnosed with MS. Accordingly, this Court should grant Mr. Umanzor summary judgment on the issue of liability and allow his claims to proceed to trial on damages.

Respectfully submitted,

Walker G. Harman, Jr.

cc: Joseph D. Lockinger (via ECF)

---

[7] *Jacques v. Di Marzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004); *Tubens v. Police Dep't of City of New York*, 48 F. Supp. 2d 412, 416 (S.D.N.Y. 1999).
[8] 42 U.S.C. § 12102(2)(A)–(C).
[9] 29 C.F.R. § 1630.2(1).
[10] 131 A.D.2d 849 (Sup. Crt. 2nd Dep't 1987).
[11] *Id.* 849.
[12] *Id.*
[13] *Id.* at 50.