

ZACHARY W. CARTER
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**JOSEPH DANIEL LOCKINGER**
*Assistant Corporation Counsel*
Labor & Employment Law Division
(212) 356-4076
jlocking@law.nyc.gov

October 9, 2015

**BY ECF**
Honorable Vernon S. Broderick
United States District Court Judge
United States District Court
Southern District of New York
40 Foley Square, Room 415
New York, New York 10007

      Re: *Randy Umanzor v. The New York City Police Department*,
          Docket No. 14 Civ. 9850 (VSB) (KNF)

Dear Judge Broderick:

      I am an Assistant Corporation Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, attorney for defendant New York City Police Department (hereinafter "NYPD" or "Defendant") in the above-referenced action. I write to respond to Plaintiff's letter dated October 5, 2015, seeking a pre-motion conference related to Plaintiff's anticipated motion for partial summary judgment on the issue of liability ("Pltf. Pre-Motion Letter"). See Document 24. Defendant intends to cross-move for summary judgment on the issue of liability, and as such joins in Plaintiff's request for a pre-motion conference. However, Defendant notes fact discovery is still not complete and as such a motion for summary judgment is premature, at this point in time, as Plaintiff has still failed to produce, or provide medical releases, for all requested medical records in this action which are relevant to the issue of liability. Specifically, (1) Defendant has not been able to examine the medical records for Doctor Kristen Babinski ("Dr. Babinski") because they have not been produced to date and a release for these medical records was not provided by Plaintiff until October 6, 2015; and (2) Defendant has not been able to examine other physician medical records related to Plaintiff's treatment and diagnosis with Multiple Sclerosis ("MS") preceding his medical disqualification in 2014.

### Plaintiff Will Be Unable to Demonstrate He Was Otherwise Qualified to Perform the Essential Functions of a Police Officer

      The Second Circuit defines multiple sclerosis ("MS") as a "disease in which the body's immune system attacks the central nervous system, repeatedly injuring the nerves and ultimately causing them to degenerate. MS has no cure and can often lead to partial or complete

paralysis, but medication can slow the diseases progression." Fulton v. Goord, 591 F.3d 37, 40 (2d Cir. 2009). Plaintiff alleges he was disqualified based on a perceived impairment, whether present or in remission, associated with his diagnosis of MS that he claims is inaccurate. As such, unlike the traditional disability discrimination case, Plaintiff is not arguing he was denied his position as a result of discriminatory animus in the usual sense. Rather, Plaintiff's claims that Defendant incorrectly determined Plaintiff was unsuited for appointment as a Police Officer, because the NYPD mistakenly believed that the risk of his symptoms returning, which were in remission, was worse than it actually was and that it was not severe enough to prevent him from performing the job. As such, Plaintiff's claims, presented under the regarded as disabled prong of the ADA, do not allege "a traditionally 'invidious' discriminatory intent" against defendant, rather Plaintiff alleges the NYPD was mistaken as to its belief he was disabled by his MS. Nelson v. City of New York, No. 11-CV-2732 (JPO), 2013 U.S. Dist. LEXIS 117742, *24 (S.D.N.Y. Aug. 19, 2013).

The "regarded as disabled" provision of the ADA "is intended to benefit only those employees erroneously perceived to be disabled, and who are in fact fully able to perform the essential functions of that job." Nelson, 2013 U.S. Dist. LEXIS 117742, *24 (citations omitted). Essentially, in this case, as in Bynum v. New York City Transit Authority, the plaintiff alleges "employment discrimination based on the [employer's] perception that because [he] suffers from [MS], [he] was not qualified to perform the essential functions of [his] job . . . ." No. 01-CV-7945 (CLP), 2007 U.S. Dist. LEXIS 35856, *1 – 2 (E.D.N.Y. May 16, 2007). However, Plaintiff bears the burden of production and persuasion on the issue of whether he is "otherwise qualified" for the job in question. Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 137 (2d Cir. 1995), and "an employee is not 'otherwise qualified' if he or she poses a direct threat to the health and safety of others." Brennan v. New York City Police Dep't, 93-CV-8461 (BSJ), 1997 U.S. Dist. LEXIS 23193, at *16 (S.D.N.Y. May 27, 1999), aff'd, 1998 U.S. App. LEXIS 1923 (2d Cir. 1998). "Inextricably intertwined with a plaintiff's burden on [establishing he is an otherwise qualified individual] is an employer's potential defense that, because of the employee's actual or perceived disability, he or she constitutes a 'direct threat to themselves or others' and is thereby unqualified for the position." Makinen v. City of New York, 53 F. Supp. 3d 676, 694 (S.D.N.Y. 2014), citing, 42 U.S.C. § 12113(b).

"A direct threat is a significant risk to the health or safety of others that cannot be eliminated by a reasonable accommodation." Giodano v. City of New York, 99-CV-3649 (AGS), 2001 U.S. Dist. LEXIS 2039 at *16-17, rev'd in part on other grounds, 274 F.3d 740 (2d. Cir. 2001) (finding that a police officer permanently taking a blood thinning medication, could not perform the essential functions of an NYPD officer without posing a direct threat to himself or others); see also Siederbaum v. City of New York, 309 F. Supp. 2d 618, 628 n. 4 (S.D.N.Y. 2004). An employer can avail itself of this defense, if it conducts "an individualized assessment of the employee's present ability to safely perform the essential functions of the job based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." Makinen, 53 F. Supp. 3d at 694. In situations where a mishap on the job potentially threatens the public safety, Courts are generally more deferential to employer's discretion in evaluating the risk posed by a plaintiff's disability or impairment. See Nelson, 2013 U.S. Dist. LEXIS 117742, *35 (finding that "the courts quite properly accord a significant measure of deference to a police department's determination that an officer poses too great a risk to herself and the public"); see also, D'Amico v. City of New York, 132 F. 3d 145,

151 (2d Cir. 1998) ("[w]hat may be a reasonable risk for a postal worker . . . whose job generally does not pose great hazards to those who perform it or to the public they serve, is not necessarily a reasonable risk for a firefighter, whose job is defined at almost every turn by the potential for disaster to himself and others).

        Here, there can be no dispute that the NYPD has a duty to protect the safety of the public and its officers, and in doing so, has a duty to ensure that its police officers are medically fit for duty. There can also be no dispute that police work is inherently stressful. Indeed, "Police officers must be armed and able to respond immediately to emergency (and non-emergency) situations, either on foot or by vehicle." Brennan, 1997 U.S. Dist. LEXIS 23193 at *17 – 18. In this case, Plaintiff will be unable to meet his burden to demonstrate he was otherwise qualified to perform the essential functions of the job of Police Officer. First, the NYPD determined, based on an individualized medical evaluation of Plaintiff, that his recent diagnosis with MS coupled with the very short period of time during which Plaintiff had been asymptomatic made it impossible to predict if and when Plaintiff would suffer a debilitating relapse if he was qualified as a Police Officer. In Plaintiff's case, Dr. Lichtenstein stated Plaintiff had two attacks in 2013, and that Plaintiff was placed on maintenance therapy on July 24, 2013. As such, Dr. Lichtenstein did not believe the period of time between when Plaintiff first became asymptomatic and his application to be an NYPD Cadet in February of 2014 was long enough to establish whether Plaintiff would remain medically stable. This uncertainty made it unreasonable to believe Plaintiff could perform an essential function of police work: specifically, qualify and remain qualified for firearms usage and possession. The rationale behind this decision is that certain symptoms related to Plaintiff's MS would have a direct effect on his ability to deploy or control a firearm, specifically the numbness in his left hand, and these symptoms could come on unexpectedly even though Plaintiff was asymptomatic at the time and under treatment.

        Second, even though plaintiff was diagnosed with remitting relapsing MS, as Doctor Lichtenstein explained in his deposition, at the point and time when Plaintiff applied to be a Police Officer it was impossible to reach a prognosis as to whether Plaintiff's MS diagnosis and treatment would remain stable going forward. At his deposition, Dr. Lichtenstein explained that twenty-five percent of people diagnosed with MS, who experience exacerbations of their disease within the first three to five years, are reclassified as having progressive relapsing MS. For this reason, Dr. Lichtenstein believed that at minimum two years would have needed to pass, where Plaintiff had remained asymptomatic, prior to consideration of any application he may submit for the position of Police Officer. Dr. Lichtenstein explained there is no NYPD policy concerning what constitutes a "reasonable amount of time" for a candidate to be in remission for candidates with MS. However, Dr. Lichtenstein testified that because Plaintiff was applying to be an NYPD Cadet, a two-year remission period would have been reasonable since Plaintiff would have had an additional two years as an NYPD Cadet before he underwent a new medical exam.[1]

---

[1] In order to be considered for appointment as an NYPD Police Officer from the NYPD Cadet Corps, Plaintiff would be required to pass the NYPD Promotional Police Officer's exam and meet the other requirements to be qualified as a Police Officer

Further, plaintiff testified he quit his job at Modell Sporting Goods in early 2013, when he first experienced symptoms related to MS, and that he has not been employed since his diagnosis with MS. Thus, Plaintiff has no evidence to establish he is able to work, in any capacity, with the current state of his MS. As such, Plaintiff cannot establish that he is a "qualified individual" under the ADA. Further, all the attendant stresses of police work: extended periods of time working, sleep deprivation, bursts of activity, and traumatic encounters, all increase the potential risk of relapse. Because the primary hazard of someone with MS performing police work is neuromotor sensory loss and the inherent inability to control or properly deploy his firearm, it is an unreasonable risk for the NYPD to assume that Plaintiff will be able to safeguard or deploy his gun faced with the attendant stressors of police work and the increased risk those stressors bring to an individual with an MS diagnosis, particularly when that individual has a very limited amount of time where he has been asymptomatic and has already experienced both sensory deprivation and weakness in his left hand.

Finally, the notion that an employer may make fitness determinations is codified in the ADA, which permits an employer to use qualification standards or other selection criteria in an attempt to screen out individuals who cannot perform the essential functions of the position. 29 C.F.R. § 1630.2(m) and (q); see also 42 U.S.C. § 12113(a). The statute provides that "the term 'qualification standards' may include a requirement that an individual shall not pose a threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). "[A] police officer's activities implicate serious safety concerns. . . [and] [t]he ADA specifically permits employers to consider such concerns when determining whether an employee is 'qualified.'" Brennan, 1997 U.S. Dist. LEXIS 23193 at *17 – 18. During his deposition, Dr. Lichtenstein, the NYPD surgeon who disqualified Plaintiff, testified he had qualified two candidates diagnosed with MS within the last three years because (1) they were in good physical condition with no neurological deficits, (2) they had very strong letters from their neurologists that they were in remission, and (3) a reasonable amount of time had occurred since their last episode. In Plaintiff's case, Dr. Licthenstein determined for the reasons stated above that he could not be qualified as a Police Officer without posing a threat to himself or others, which is not a violation of the ADA but rather in keeping with the duties of the NYPD medical screening process.

Respectfully submitted,

/s/ *Joseph D. Lockinger*
Joseph D. Lockinger
Assistant Corporation Counsel

cc: Walker G. Harman, Jr. (by ECF)