THE HARMAN FIRM, LLP

Attorneys & Counselors At Law
www.theharmanfirm.com

November 23, 2015

<u>Via ECF</u>

Hon. Vernon S. Broderick
United States District Court
Southern District of New York
40 Foley Square, Room 415
New York, New York 10007

  Re: 14 Civ. 9850 – *Umanzor v. NYPD* – Premotion Conference

Dear Judge Broderick:

  We represent Plaintiff Randy Umanzor in the above-referenced action. Plaintiff was illegally denied entrance into the NYPD cadet program solely because he was diagnosed with Multiple Sclerosis (MS). We do not oppose Defendant's request for authorizations to obtain medical documents related to MS. We do oppose Defendant's request for medical records, including authorizations for Brooklyn Hospital Center (the "Hospital") and Manana Petrov, M.D. These documents have nothing to do with MS and predate Plaintiff's MS diagnoses. Defendant currently has in its possession all medical records related to his MS diagnosis generated by Dr. Babinski up to Plaintiff's application as well as all documents generated by Alla Mesh, M.D.

  Defendant continues to request other documents and information irrespective of whether the requests seek information relevant to the claims and defenses in this action. Defendant is engaged in a full-scale fishing expedition trying to locate what it believes are bad facts to malign Plaintiff's character and somehow thereby discredit his claim. Defendant's attorneys have also cherry-picked facts from medical records generated by experts in their fields of medicine and offered attorneys' opinions about the meaning of medial records, which is improper. Defendant has not identified any expert and its attorneys are not qualified to analyze and offer opinions about the meaning of information in voluminous medical records.

<u>Essential Functions Element and Direct Threat Defense</u>

  Defendant argues that medical records generated by the Hospital and Dr. Petrov are relevant to whether Plaintiff can carry its burden of showing that he could perform the essential functions. However, Plaintiff has already met that burden. Defendant further argues that documents from years ago will show that Plaintiff constituted a direct threat to himself or others. Defendant boldly makes this argument for pre-MS disclosure, having no idea what the documents contain. In fact, Plaintiff has never seen these documents but he knows for certain that the documents do not relate to MS, ad he had not been diagnosed and treated. A "direct threat" defense only is available where a defendant had made an individualized inquiry into the

1776 Broadway, Suite 2030
New York, New York 10019
T 212 425 2600 F 212 202 3926

ability of an employee or applicant to perform a particular job, one which focuses on the medical condition's actual effect on the specific plaintiff, which Defendant never did. *Makinen v. City of New York*, 53 F.Supp.3d 676, 694 (S.D.N.Y. 2014). Since this defense is not available to Defendant, its request on this basis invalid.

The testimony of Defendant's doctor, David Lichtenstein, M.D., reveals that Defendant believed that Plaintiff could perform the essential functions of the position, and that he did not pose a direct threat to himself or others at the time of Defendant's decision not to hire him. Dr. Lichtenstein stated his only issue with Plaintiff was the timing of his diagnosis, which at that point was less than two (2) years before his application. Dr. Lichtenstein did not feel comfortable with the "short" period of time between his diagnosis and his application. Concerning Plaintiff's ability to perform the essential elements of the job, Dr. Lichtenstein stated that Plaintiff had intact neurological status with no real deficiencies. The only issue Dr. Lichtenstein raised was that not enough time had purportedly passed since his initial diagnoses. This conjecture about what might happen in the future is not a legal basis to decline employment.[1]

Dr. Lichtenstein testified that he agreed that Dr. Babinski's letter cleared Plaintiff for service as an NYPD officer. Dr. Lichtenstein also agreed that immunomodulators are very effective and likely allow Plaintiff to be asymptomatic for decades. Therefore, Plaintiff can show that he could perform the essential functions of the job with just Defendant's doctor's testimony. Further, Plaintiff's own doctor has medically cleared Plaintiff twice, giving her opinion that he is fit to perform the duties of a cadet; there is nothing in the record that shows Plaintiff relapsed or that he developed new MS symptoms. In fact, Plaintiff's MS treatment never changed, as nothing Plaintiff reported was related to MS.

Accordingly, Defendant has not shown any reason to believe that further discovery prior to Plaintiff's diagnosis would have any bearing on whether he was a threat to himself or others at the time of his application.

## Defendant Misconstrues Medical Records

The "symptoms" from Dr. Babinski's March 28, 2014 report that Defendant recites were neither corroborated by any objective medical tests nor did they last. According to Plaintiff and Dr. Babinski, none of these general observations was related to MS. Thereafter, Dr. Babinski twice formally cleared Plaintiff to work and confirmed in writing that he was medically stable and fit to perform the duties of a cadet. *See* Exhibits A and B.

## Defendant Misconstrues Deposition Testimony

Defendant's accusation that Plaintiff misrepresented his medical condition to this Court is entirely contrived. Defendant describes Plaintiff's deposition, dated July 15, 2015, transcript 43:7 – 43:21 as, "Plaintiff specifically denied experiencing any numbness in his fingers after

---

[1] This would be the functional equivalent of refusing to hire someone a female applicant because she might become pregnant in the future.

beginning his medication in September of 2013." Defendant's statement is not accurate. This is what the Plaintiff actually stated:

> Q: Since you began the medication, have you had any numbness?
> MR. RIVERA: Objection.
> A: What I felt, I believe I felt tingly in my hand – nothing that stopped me from doing anything, moving my hand. Nothing that would prevent me from doing my duties as a cadet or police officer.
> Q: When did you feel the tingling in your hand?
> A: I would say maybe I felt it before I saw her in September. Then maybe a few months after, it came back for a short period of time.
> Q: Which hand?
> A: My left hand, my two fingers. I wouldn't say it was a numb feeling I could feel it, but I did feel a little tingle.
> Q: Could you describe the sensation beyond tingling, like what does it feel like?
> A: I could feel it, I could move it, do everything with it but there is a slight tingle. Like I said, I never had any issue moving it or doing anything with my left hand. Honestly, nothing that would prohibit me from doing any duties.

Umanzor Dep. Trns., 43:7 – 43:3.

Plaintiff clearly stated that he had "tingling" in his hand that did not prevent him from performing any cadet duty. Regardless, whether this "tingling" constitutes a "numbness" is irrelevant, as neither would prevent Plaintiff from performing the essential duties of the job. This is not a new revelation as Plaintiff's doctor identified this issue in a letter she wrote in support of his application. *See* Exhibit A.

Defendant has refused to agree to confidentiality and/or otherwise sign a proposed protective order governing the disclosure of any medical information, making it even more prejudicial to force Plaintiff to release his entire medical history, history which is not relevant to this case. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's request for any additional discovery, order that discovery is closed, and allow the parties to proceed with motion practice.

Respectfully submitted,

Walker G. Harman, Jr.

cc: Joseph D. Lockinger, Esq. (via ECF)