Docket No. 14 CV 9850 (VSB) (KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RANDY UMANZOR,

                              Plaintiff,

-against-

THE NEW YORK CITY POLICE DEPARTMENT,

                              Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*

*Attorney for Defendant*
*100 Church Street, Rm 2-122*
*New York, New York  10007*
*Tel:  (212) 356-2471*
*Matter No.:  2015 - 000522*

Mario Frangiose,
Michael F. Fleming,
  Of Counsel.

**TABLE OF CONTENTS**

                                                                      **Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

        PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDMGENT AS HE HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION. .................................................................................... 3

                A.   THE SUMMARY JUDGMENT STANDARD IN DISABILITY DISCRIMINATION CLAIMS ................................................................. 3

                B.   PLAINTIFF CANNOT ESTABLISH THAT HE WAS QUALIFIED FOR THE POSITION OF POLICE CADET. ........................................... 4

                C.   PLAINTIFF CANNOT SHOW THAT DEFENDANT'S DETERMINATION WAS NOT AN INDIVIDUALIZED, REASONABLE ASSESSMENT OF HIS MEDICAL STATUS BASED UPON CURRENT MEDICAL KNOWLEDGE AND/OR THE BEST AVAILABLE EVIDENCE. ............................................................................................ 9

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Borkowski v. Valley Cent. Sch. Dist.,
   63 F.3d 131 (2d Cir. 1995)..................................................................................................4

Brennan v. New York City Police Dep't,
   No. 93 Civ. 8461 (BSJ), 1997 WL 811543, 1997 U.S. Dist. LEXIS 23193
   (S.D.N.Y. May 19, 1997) aff'd, 141 F.3d 1151 (2d Cir. 1998)..........................................9, 10

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)...........................................................................................................3

Chevron U.S.A. v. Echazabal,
   536 U.S. 73 (U.S. 2002)....................................................................................................11

Chrebet v. County of Nassau,
   2014 U.S. Dist. LEXIS 63986 (E.D.N.Y. Feb. 28, 2014).....................................................6

Cortes v. MTA N.Y. City Transit,
   802 F.3d 226 (2d Cir. 2015) (ADA) ...................................................................................3

D'Amico v. City of New York,
   132 F.3d 145 (2d Cir. 1998)...........................................................................................4, 11

Davis v. New York City Dep't of Educ.,
   804 F.3d 231 (2d Cir. 2015)................................................................................................3

Franz v. Johnson,
   2009 U.S. Dist. LEXIS 68336 (S.D.N.Y. July 29, 2009) .....................................................6

Fraterrigo v. Akal Sec., Inc.,
   No. 06 Civ. 9861 (SHS), 2008 U.S. Dist. LEXIS 87451 (S.D.N.Y. Oct. 29,
   2008) aff'd 376 Fed. Appx. 40, 42 (2d Cir. 2010)..............................................................12

Howard v. City of New York,
   62 F. Supp. 3d 312 (S.D.N.Y. 2014)..................................................................................12

Kinneary v. City of New York,
   601 F.3d 151 (2d Cir. 2010)................................................................................................4

Makinen v. City of New York,
   53 F. Supp. 3d 676, 694 (S.D.N.Y. 2014) ................................................................. *passim*

McDonnell v. Schindler Elevator Corp.,
   618 Fed. Appx. 697 (2d Cir. 2015).....................................................................................9

| **Cases** | **Pages** |
|---|---|

Nadel v. Shinseki,
   57 F. Supp. 3d 288 (S.D.N.Y. 2014) (Broderick, J.) ..........................................................4, 9

Nelson v. City of New York,
   11 Civ. 2732 (JPO), 2013 WL 4437224, 2013 U.S. Dist. LEXIS 117742
   (S.D.N.Y. Aug. 19, 2013) ..................................................................................................10, 12

Roge v. NYP Holdings, Inc.,
   257 F.3d 164 (2d Cir. 2001).....................................................................................................3

Russell v. County of Nassau,
   696 F. Supp. 2d 213 (E.D.N.Y. 2010) .....................................................................................3

Sarmiento v. Queens College,
   386 F. Supp. 2d 93 (E.D.N.Y. 2005) aff'd, 153 Fed. Appx. 21 (2d Cir. 2005) .........................4

Siederbaum v. City of New York,
   309 F. Supp. 2d 618 (S.D.N.Y. 2004) aff'd 2005 U.S. App. LEXIS 2902 (2d
   Cir. Feb. 17, 2005) .................................................................................................................14

Spiegel v. Schulmann,
   604 F.3d 72 (2d Cir. 2010).................................................................................................. 3, 4

Teahan v. Metro-North C. R. Co.,
   951 F.2d 511 (2d Cir. N.Y. 1991) ..........................................................................................11

Vandenbroek v. PSEG Power Ct LLC,
   356 Fed. Appx. 457 (2d Cir. 2009) ..........................................................................................4

**Statutes**

Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ............................................. *passim*

New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, et seq.,
   ("NYCHRL")...................................................................................................... *passim*

**Other Authorities**

29 CFR 1630.2(r) ...............................................................................................................................11

Local Civil Rule 56.1..........................................................................................................................2, 8

# PRELIMINARY STATEMENT

Plaintiff Randy Umanzor ("Plaintiff") has moved for "partial summary judgment on liability" in this action, in which he alleges that his medical disqualification as a candidate for the New York City Police Department ("NYPD" or "Department") Police Cadet Corps was in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, et seq., ("NYCHRL"). Plaintiff claims in a ten-page memorandum of law in support of his motion ("Pl. Brief") that he can establish a *prima facie* case of disability discrimination and that Defendant cannot establish that it had a "legitimate[,] non-discriminatory business reason" for Plaintiff's disqualification. (See Pl. Brief, ECF Dkt. No. 62.) Short on legal support and rife with inaccurate representations of the factual record, Plaintiff's brief is less than persuasive. His purported evidentiary support is no better. Specifically, Plaintiff submits as evidentiary support: (1) an affidavit, in which he argues that his alleged efforts to obtain employment in late 2015 and early 2016 are sufficient evidence to show that he was qualified for the NYPD Cadet Corps in April and May 2014 ("Pl. Aff."; ECF Dkt. No. 62-2); (2) a brief, self-contradictory affidavit from his treating neurologist, Dr. Kristen Babinski ("Babinski Aff."; ECF Dkt. No. 62-1); and, (3) excerpts from the deposition testimony of David Lichtenstein, the NYPD Deputy Chief Surgeon who disqualified Plaintiff for the Cadet Corps. Notably missing from the evidentiary submissions are any of Plaintiff's medical records – contemporaneous or otherwise. None of the evidence submitted addresses the sole factual and legal issue at the heart of this dispute – whether the NYPD's determination that Plaintiff was not qualified because he posed a "direct threat" to the public, the other members of the department, and to himself. Plaintiff cannot establish that he was qualified for the position, nor has he adequately disputed the basis for the NYPD's determination. Accordingly, Plaintiff is not entitled to summary judgment on his claims.

# STATEMENT OF FACTS[1]

Plaintiff was hospitalized for ten days in February 2013 after complaining of prolonged numbness on his left side and that he was discharged with the diagnosis of having suffered a "minor stroke." In May 2013, after another onset of neurological symptoms, including difficulty walking, Plaintiff was seen by a neurologist, Dr. Kristen Babinski, and diagnosed with Multiple Sclerosis ("MS"). Plaintiff began treatment for MS in late July 2013, about six months before he submitted his application to join the Police Cadet Corps. In April 2014, as part of the medical screening portion of the application process, Plaintiff was evaluated by the NYPD's Medical Division. Plaintiff was asked to provide the NYPD with the medical records related to his MS for the Medical Division to review. Plaintiff provided certain documents maintained by Dr. Babinski's office and a brief note from Dr. Babinski, in which she opined that Plaintiff was "medically stable for entry into the NPYD as a cadet." Those records were reviewed by NYPD Deputy Chief Surgeon Dr. David Lichtenstein, who determined that the period between Plaintiff's diagnosis and his application was insufficiently long to safely and reasonably rule out the risk that Plaintiff's MS would suddenly relapse while he was on the job, endangering the public, other members of service and the Plaintiff, himself. As such, based on the then most-current medical knowledge and the best available objective evidence – plaintiff's own medical records – Dr. Lichtenstein disqualified Plaintiff for appointment to the Cadet Corps.

---

[1] For a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to Defendant's Statement of Undisputed Facts Under Local Civil Rule 56.1, dated April 1, 2016 ("Def. 56.1 Stmnt"; ECF Dkt. No. 60-2), the Declaration of Assistant Corporation Counsel Michael F. Fleming, dated April 1, 2016 ("Fleming Decl."; ECF Dkt. No. 58) and the exhibits annexed thereto, and the Declaration of NYPD Deputy Chief Surgeon David Lichtenstein, M.D., dated March 31, 2015 ("Lichtenstein Decl."; ECF Dkt. No. 57) and the exhibits annexed thereto.

## ARGUMENT

## PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDMGENT AS HE HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION.

**A. The Summary Judgment Standard in Disability Discrimination Claims**

Employment discrimination claims brought under the ADA and the NYCHRL are subject to the familiar burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green. See Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 231 (2d Cir. 2015) (ADA); Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (NYCHRL). The elements of a *prima facie* claim of disability discrimination are that: (1) the employer is subject to the statute(s); (2) the plaintiff is disabled within the meaning of the statute(s) or perceived to be so by his employer; (3) the plaintiff was "otherwise qualified" to perform the "essential functions" of the job with or without reasonable accommodation; (4) that the plaintiff suffered an adverse employment action; and (5) the adverse action was imposed because of his disability." Davis v. New York City Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015). The Plaintiff must establish these elements by a preponderance of the evidence and the movant may point to the absence of evidence on an issue on which the non-movant bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001); Russell v. County of Nassau, 696 F. Supp. 2d 213, 231 (E.D.N.Y. 2010).

"Inextricably intertwined with a plaintiff's burden of [establishing he is an otherwise qualified individual] is an employer's potential defense that, because of employee's actual or perceived disability, he or she constitutes a 'direct threat to themselves or others' and is thereby unqualified for the position." Makinen v. City of New York, 53 F. Supp. 3d 676, 694 (S.D.N.Y. 2014). Where, as here, the defendant asserts a "direct threat" defense, Plaintiff must

show that there are no genuine issues of material facts as to both (1) his qualifications to perform the essential functions of police work at the time he applied for the NYPD and (2) that defendant's direct threat determination was not based on an "individualized, reasonable assessments based upon current medical knowledge and/or the best available evidence." Id. The "facts" set forth in Plaintiff's self-serving and contradictory affidavits, and in the scant exhibits annexed thereto, are insufficient to satisfy his evidentiary burdens at this stage of the litigation.

**B.     Plaintiff Cannot Establish That He Was Qualified for the Position of Police Cadet.**

Plaintiff cannot make out a *prima facie* case of disability discrimination unless he can establish that he is a "qualified individual" under the statute. 42 U.S.C. § 12112(a). "An employee is 'otherwise qualified' if he 'is able to perform the essential functions of that job, either with or without a reasonable accommodation.'" Vandenbroek v. PSEG Power Ct LLC, 356 Fed. Appx. 457, 459 (2d Cir. 2009) (internal citation omitted); see also; Kinneary v. City of New York, 601 F.3d 151, 158 (2d Cir. 2010) (same analysis applies under NYCHRL). "[T]he plaintiff bears the burden of production and persuasion on the issue of whether []he is otherwise qualified for the job in question." Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 137 (2d Cir. 1995). However, "whether an individual is qualified for a job must be assessed in relation to the criteria the employer has specified for the position, not criteria that seem reasonable to the litigant." Sarmiento v. Queens College, 386 F. Supp. 2d 93, 97 (E.D.N.Y. 2005) aff'd, 153 Fed. Appx. 21 (2d Cir. 2005). In determining which functions are to be considered essential, the Second Circuit has instructed that lower courts accord "considerable deference" to an employer's judgment. See Vandenbroek, 356 Fed. Appx. at 459; D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998). Further, "[a]s is well established in this Circuit, Plaintiff's 'subjective view of [his] performance does not create a genuine issue of material fact.'" Nadel v. Shinseki,

57 F. Supp. 3d 288, 297 (S.D.N.Y. 2014) (Broderick, J.) (internal citation omitted; edits original).

Plaintiff argues that he "is mentally and physically capable of performing the duties of a Cadet and a police officer." (See Pl. Brief at pg. 7.) In support of this conclusion, Plaintiff cites to his alleged engagement in physical activity – e.g., playing basketball – and his employment history beginning in September 2015, a year and a half after he was screened by the NYPD Medical Division. (See id.) The evidentiary support for these "facts" is a self-serving affidavit submitted by Plaintiff that lacks any evidentiary record of Plaintiff's present physical fitness or his employment history and a barebones, equally conclusory affidavit submitted by his treating neurologist, Dr. Kristen Babinski. (See Plaintiff's Affidavit, ECF Dkt. No. 62-2 and Babinski Affidavit, ECF Dkt. No. 62-1.)

Preliminarily, Plaintiff's physical condition in March 2016 – assuming that his representations are accurate – has limited relevance in determining Plaintiff's qualifications at the time of his application. Even assuming that Plaintiff's ability to engage in "physical activities" such as basketball is somehow relevant to his ability to perform the essential functions of a police officer – an argument for which Plaintiff has submitted no legal authority in his brief – Dr. Babinski's medical records show that in March 2014, Plaintiff also reported feeling "lightheaded while playing basketball." (See Lichtenstein Decl. Ex. "I" – Babinski Medical Records at pp. D00928-931.) Therefore, to the extent such "evidence" is relevant, the contemporaneous record actually weighs against finding Plaintiff's MS had no effect on his ability to perform "physical activities."

Similarly, Plaintiff's work as a toll booth operator and an usher more than a year and a half after he was disqualified by the NYPD has no relevance to Plaintiff's ability to

- 5 -

perform the essential functions of a police officer at the time he applied. Apart from his self-serving assertion that such work establishes his fitness for the Cadet Corps, Plaintiff provides no information to the Court or to the Defendant from which such a conclusion could be reached. Plaintiff does not state the duration of his employment with MTA or Barclays. He does not state the amount of time he performs any of the enumerated tasks. He does not even state the amount of time – per week, per day, etc. – that he works at all. Aside from his own assessment, he offers no objective indication of how well he performs these alleged tasks. Notably, in response to Defendant's request for his employment records, Plaintiff refused to provide any documents on the grounds that they were "unrelated to Plaintiff or any claims or defenses in this action." Plaintiff should not be permitted to now use the withheld documents to argue that he was qualified to perform the essential functions of a police officer years prior to his current employment. See Franz v. Johnson, 2009 U.S. Dist. LEXIS 68336, *20 (S.D.N.Y. July 29, 2009) ("To properly respond to [a summary judgment] motion, Plaintiff must have the requested documents . . . , and not be ambushed upon service of the motion for summary judgment."); see also Chrebet v. County of Nassau, 2014 U.S. Dist. LEXIS 63986, *54 (E.D.N.Y. Feb. 28, 2014) (denying motion to amend complaint where Plaintiff had previously asserted in response to discovery requests that certain issues were not relevant to the claims and defenses).

Telling, Plaintiff has not offered the Court any medical records regarding his medical condition at the time he applied to the NYPD, nor has he offered any objective medical record of his current medical condition. Instead, Plaintiff offers only a brief affidavit from his treating neurologist, Dr. Babinski, to establish his qualified status in the Spring of 2014. (See, generally Babinski Affidavit.) The single "fact" that arguably goes towards Plaintiff's burden of proof is Dr. Babinski's "professional opinion" that he was capable of performing the essential

functions of a police officer at that time. (See id. at ¶ 14.) A number of inconsistencies in Dr. Babinski's affidavit counsel against granting any deference to her conclusions. First, Dr. Babinski claims that while on his medication, Plaintiff was "asymptomatic except for left thumb/index finger numbness." (Id. at ¶ 10.) This is belied by Dr. Babinski's own records which record a number of symptoms that befell Plaintiff after he started taking Tecfidera in late July 2013, including an incident in November 2013 when Plaintiff reported that his "left arm [went] numb down to [his] index finger and thumb." (See Lichtenstein Decl. Ex. "I" – Babinski Medical Records at pp. D000928.)

Three paragraphs later, Dr. Babinski, somewhat astonishingly, claims that Plaintiff was "asymptomatic" at the time of his application to the NYPD. (See Babinski Aff. at ¶ 13.) However, Dr. Babinski's records from a March 28, 2014 consult with Plaintiff, just days before he was screened by the NYPD Medical Division, state that Plaintiff was experiencing "severe fatigue"; that he "was lightheaded when getting out of bed" and had been all year; that he had "terrible memory" and was doing increasingly poorly in school; and that his fingers were "STILL" numb from the November 2013 incident. (See Lichtenstein Decl. Ex. "I" – Babinski Medical Records at pp. D000928 (emphasis original).) Dr. Babinski described Plaintiff's neurological state in March 2014 as "confusion, numbness, tingling." (See id. at pp. D000929.) She offers no explanation for her sudden change of prognosis three weeks later, when she told the NYPD that Plaintiff was "medically stable" to join the Police Cadet Corps.

In his supporting brief, Plaintiff claims that Dr. Babinski found that he was "capable of performing police work." (Pl. Brief at pg. 8.) That is not entirely accurate. Dr. Babinski's April 2014 letter to the NYPD stated only that she believed he was "medically stable for entry into the NYPD *as a cadet*." (See Babinski Aff. at Ex. "B" (emphasis added).) She

offers no explanation for how she arrived at this conclusion. Plaintiff testified that prior to Dr. Babinski submitting the letter on his behalf in April 2014, he never discussed the essential functions of an NYPD Police Officer with her and that he never gave her any document explaining those functions. (See Fleming Decl., Ex. "L" - Umanzor Depo at 76:9-10, 78:12 – 79:2.) Importantly, in April 2014, Dr. Babinski did not state that she believed that Plaintiff was fit to perform the essential functions of a police officer. However, in her affidavit, Dr. Babinski claims that Plaintiff's MS "did not and does not prevent him from participating in any physical activity or from performing any of the essential functions of a police officer." (See Babinski Aff. at ¶ 11.) Dr. Babinski states that she "understands" that the "activities" include "firing a gun, running, tackling, lifting and apprehending criminals under stressful circumstances." (Id.) Dr. Babinski provides absolutely no explanation of the basis of her "understanding" of the essential functions.

As is detailed in Defendant's Local Rule 56.1 Statement submitted in support of their motion, the essential functions of a police officer include carrying an injured adult with assistance; gripping persons to prevent escape; restraining a suspect by use of handcuffs; engaging in hand to hand struggles to subdue a suspect resisting arrest. (See Def.'s 56.1 Stmnt at ¶¶ 7-8, 13.) Dr. Babinski fails to explain – in her affidavit, as well as in her April 2014 letter to the NYPD – how Plaintiff's sensory loss in his arm, hand and fingers would have no effect on his ability to use a firearm, manipulate handcuffs, engage in close combat with criminals or otherwise perform the essential functions of the job. She does not address how Plaintiff's condition would be affected by sleep deprivation or extreme stress. She does not address the threat that a relapse of Plaintiff's more severe MS symptoms at all, or the affect that such a relapse would have on his ability to perform the essential functions of a police officer. She

similarly offers no basis for her assessment that Plaintiff could perform the essential functions of a Police Cadet or Officer as of July 2015. (See Babinski Aff. at ¶¶ 14, 16.)

In short, Plaintiff has not provided sufficient evidentiary support to satisfy even his minimal burden that he was "otherwise qualified" for the position. The conclusory, self-serving affidavits he has submitted should not be afforded any weight, certainly not sufficient weight to carry his evidentiary burden at this phase. See McDonnell v. Schindler Elevator Corp., 618 Fed. Appx. 697, 699 (2d Cir. 2015) (self-serving affidavit from plaintiff and witness with limited knowledge of the essential functions of the job were insufficient to meet burden on qualification prong of *prima facie* case); see also Nadel, 57 F. Supp. 3d at 297 ("Plaintiff's statements in his declaration contradicting this evidence cannot create a triable issue.") Accordingly, and for the reasons set forth in Defendant's memorandum of law in support of its motion for summary judgment (see Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def's SJM Brief") at Pt. I; ECF Dkt. No. 56.), Plaintiff cannot establish that he was qualified for the Police Cadet Corps at the time of his application and, therefore, he cannot be granted summary judgment on his claims.

**C.      Plaintiff Cannot Show That Defendant's Determination Was Not An Individualized, Reasonable Assessment of His Medical Status Based Upon Current Medical Knowledge and/or the Best Available Evidence.**

It is settled law that an employer may raise, in response to a charge of disability discrimination, an affirmative defense that the plaintiff is not qualified for the position because he or she poses a "direct threat to themselves or others" due to the plaintiff's actual or perceived disability. See Makinen, 53 F. Supp. 3d at 694; see also Brennan v. New York City Police Dep't, No. 93 Civ. 8461 (BSJ), 1997 WL 811543, 1997 U.S. Dist. LEXIS 23193, *16 (S.D.N.Y. May 19, 1997) (collecting cases where Circuit and district courts analyzing the ADA "qualification standard" provisions have concluded that "an employee is not 'otherwise

qualified' if he or she poses a direct threat to the health and safety of others.") aff'd, 141 F.3d 1151 (2d Cir. 1998). A defendant is entitled to summary judgment on a direct threat defense so long as its determination to disqualify was based on an individualized assessment of the plaintiff and was supported by a "reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence." See Makinen, 53 F. Supp. 3d at 694. In order to rebut such a determination, Plaintiff must show that there is no genuine issue of material fact as to both the aforementioned issues so at to warrant judgment in their favor. Id. "An erroneous diagnosis, or one based on what is later learned to be an erroneous view of the facts, is not necessarily an unreasonable one." Id. at 698. "[T]he courts quite properly accord a significant measure of deference to a police department's determination that an officer poses too great a risk to herself and the public." Nelson v. City of New York, 11 Civ. 2732 (JPO), 2013 WL 4437224, 2013 U.S. Dist. LEXIS 117742, *35 (S.D.N.Y. Aug. 19, 2013) (collecting cases).

As Defendant argued at length in its memorandum of law in support of its summary judgment motion, Defendant is entitled to summary judgment on Plaintiff's claims as it has properly asserted a direct threat defense which Plaintiff cannot rebut. (See Def. SJM Brief at Pt. I(C).) There can be no dispute that the members of the NYPD occupy safety-sensitive positions in the City of New York. See Makinen, 53 F. Supp. 3d at 694 ("police officers occupy safety-sensitive positions which require the carriage and usage of deadly weapons, 'undeviating concentration,' 'split-second good judgment,' and 'self-control,' as well as the ability to tolerate 'a high degree of danger, [and] periods of enormous physical and emotional stress.'" (internal citations omitted; edits in original)); Brennan, 1997 U.S. Dist. Lexis 23193 at *17 ("It is beyond doubt that police offers occupy safety-sensitive job. They are authorized to carry and use weapons, and are responsible for maintaining the health and safety of the public"). Plaintiff also

does not dispute Dr. Lichtenstein disqualified Plaintiff out of concern that the short period of time between Plaintiff's MS diagnosis, the date he began immunotherapy and his application to the NYPD made it impossible to safely determine that Plaintiff would not suddenly relapse while on the job.[2] (See Pl. 56.1 Stmnt at ¶ 13.) Accordingly, the only dispute left to adjudicate with regard to the Defendant's direct threat defense is the reasonableness of Dr. Lichtenstein's determination.

Plaintiff sets forth no legal support for his argument that considerations of an applicant's prognosis is a *per se* violation of the law, likely because his argument is completely erroneous. The Federal Regulations interpreting the ADA, as well as case law regarding the "direct threat" defense clearly permit the NYPD to make a forward looking assessment of the applicant's qualification for the position. See 29 CFR 1630.2(r) ("In determining whether an individual would pose a direct threat, the factors to be considered include: . . . *the likelihood that the potential harm will occur*; and . . . the *imminence* of the potential harm.'" (emphasis added)); Chevron U.S.A. v. Echazabal, 536 U.S. 73, 86 (U.S. 2002) (same); D'Amico, 132 F.3d at 151 ("*likelihood of relapse is relevant* to the determination of whether an individual is otherwise qualified" (emphasis added)); Teahan v. Metro-North C. R. Co., 951 F.2d 511, 521 (2d Cir. N.Y. 1991) ("Inasmuch as [the plaintiff's] responsibilities bear on public safety concerns, any conduct demonstrated to be a manifestation of his handicap *that is likely to occur in the future* and which may implicate those public safety concerns *is a matter the district court should consider* in

---

[2] For the purposes of argument on this motion alone, Defendant concedes that this was the primary reason for Plaintiff's disqualification. However, Dr. Lichtenstein also testified that he was concerned about the lack of a detailed analysis from Plaintiff's neurologist (see Fleming Decl., Ex. "P" - Lichtenstein Depo at pg. 79:8-13), the suggestion in Dr. Babinski's letter that Plaintiff had numbness in his fingers, which was not documented in the record submitted (see id. at pg. 135:3-10) and the March 2013 MRI report that described a "large parietal lesion" and "secondary uptake in [Plaintiff's] cervical spine" (id. at pg. 127:23-25.)

determining whether he is "otherwise qualified.'" (emphasis added)); Fraterrigo v. Akal Sec., Inc., 2008 U.S. Dist. LEXIS 87451, *31 (S.D.N.Y. Oct. 29, 2008) ("the ADA could not possibly force an employer to wait to take safety measures until after a dangerous situation actually occurs.") aff'd 376 Fed. Appx. 40, 42 (2d Cir. 2010); Makinen, 53 F. Supp. 3d at 697-698 ("The focal point, in other words, is the *ex ante reasonableness* of a defendant's determination, *not an ex post determination* of its accuracy by the factfinder." (emphasis added).).

In Howard v. City of New York the district court affirmed the NYPD's direct threat determination, even though the plaintiff's medical records indicated that he was asymptomatic at the time of the decision. Howard v. City of New York, 62 F. Supp. 3d 312, 322-323 (S.D.N.Y. 2014). Specifically, the court held that "[t]o determine whether [the plaintiff] could fulfill the essential functions of the job of police officer, [NYPD] Dr. Lamstein had to make a diagnosis and a prognosis; a determination that [the plaintiff] was not currently experiencing anxiety, while relevant, could did not end her inquiry." Id. Relatedly, in Nelson v. City of New York, the court held that "deference to the [NYPD's] judgment seems particularly sensible in a case such as this, where the determination of [the plaintiff's] suitability is necessarily—at least to some extent—a judgment call; . . . the question of how [the plaintiff] would act under the stress of serving on the force could not be determinatively answered unless and until [the plaintiff] rejoined the NYPD." Nelson, 2013 U.S. Dist. LEXIS 117742 at *35-36.

Upon review of the medical records that Plaintiff submitted to the NYPD Medical Division, Dr. Lichtenstein was asked to make a judgment call regarding the likelihood that Plaintiff's symptoms would return suddenly while he was on the job, potentially endangering the public, other members of the NYPD and Plaintiff himself. Dr. Lichtenstein believed that the short period of time between diagnosis and application made it impossible to determine what

course Plaintiff's MS would take. He determined that the risk was too high to appoint Plaintiff in April 2014, less than a year after his diagnosis. The basis for Dr. Lichtenstein's determination is thoroughly detailed in the declaration he has submitted in support of Defendant's summary judgment motion. (<u>See</u>, <u>generally</u> Lichtenstein Decl.) Specifically, in his declaration, Dr. Lichtenstein presents and explains the medical literature regarding MS that he reviewed at the time of Plaintiff's application. (<u>Id</u>. at ¶¶ 8-13, 36-52). He then analyzes the medical records that Plaintiff submitted to the NYPD as part of the medical review and explains, based on the literature and the records Plaintiff provided at the time[3], the reasoning behind his determination to disqualify Plaintiff. (<u>Id</u>. at ¶¶ 53-69.)

By contrast, the only medical evidence that Plaintiff has provided is the short, conclusory affidavit from Dr. Babinski, in which she opines, without explanation, that Plaintiff is "medically stable for entry into the NYPD as a cadet." (<u>See</u> Babinski Aff. at ¶ 14.) As discussed above (<u>see</u> Pt. (B) *supra*), Dr. Babinski's affidavit is self-contradictory and disputed by Dr. Babinski's own records. It cites to no medical authority and is entirely devoid of any objective evidence to support the Plaintiff's position. Further, it does not even purport to address the NYPD's reason for disqualifying Plaintiff – the inability to accurately determine at the time of application the likelihood Plaintiff could experience a sudden relapse of his more severe MS symptoms. In sum, Plaintiff and his doctor have wholly failed to rebut Defendant's reasonable medical determination that he posed to great a risk to himself and the public based on the insufficient information at the time of his application.

---

[3] As discussed in depth in his declaration in support of Defendant's motion, Dr. Lichtenstein explained that the "new" medical records turned over by Dr. Babinski's office at the close of discovery raised additional concerns about Plaintiff's ability to safely perform the essential functions of an NYPD Cadet in April 2014 and beyond. (<u>See</u> Lichtenstein Decl. at ¶¶ 70-89.)

Plaintiff's argument that NYPD did not ask for additional medical documentation and did not call to consult with his neurologist is of no accord. In Siederbaum v. City of New York, the City's Transit Authority disqualified a candidate for a bus driver position based only on a pre-employment medical examination and review of a note submitted by the plaintiff's psychiatrist. See Siederbaum v. City of New York, 309 F. Supp. 2d 618, 621 (S.D.N.Y. 2004) aff'd 2005 U.S. App. LEXIS 2902 (2d Cir. Feb. 17, 2005). The district court concluded, and the Second Circuit affirmed, that the Transit Authority permissibly determined that Plaintiff posed a direct threat to the public due to the danger of a relapse of symptoms, even though the evidence suggested that Plaintiff's disorder was controlled by his current medication. See id. at 630. The assessment performed by Dr. Lichtenstein was more searching than the one conducted of the plaintiff in Siederbaum. Dr. Lichtenstein examined Plaintiff's Applicant Medical Questionnaire, the medical records submitted by Plaintiff's doctor, the note submitted by Plaintiff's doctor and a host of medical literature related to MS as part of his medical review. (See Lichtenstein Decl. at ¶¶ 60-69.) Plaintiff offers no legal authority for his argument that an individualized assessment requires an additional physical examination of the Plaintiff. Further, as the reason for Plaintiff's disqualification was the insufficient amount of time that had passed since his diagnosis, no additional medical information was necessary for Dr. Lichtenstein to make his decision.[4] Moreover, as Plaintiff failed to provide the Defendant with a complete copy of his medical records, depriving the NYPD of the ability to fully assess and then articulate the reason for its disqualification, there is no reason to believe that further requests from the NYPD would have been complied with in a more honest manner. Indeed, Plaintiff continued to evade questions

---

[4] Again, as discussed at length in Defendant's summary judgment motion papers, the documents that Plaintiff withheld from the NYPD would have provided additional grounds to support Dr. Lichtenstein's declaration. (See, e.g., Lichtenstein Decl. at ¶¶ 70-89.)

about the nature of his condition while under oath at his deposition. (Fleming Decl., Ex. "M" – Umanzor Deposition at pp. 43:7-21.)

Plaintiff also misrepresents or has misinterpreted Dr. Lichtenstein's deposition testimony regarding the alleged statement that the doctor would qualify Plaintiff for appointment if given another opportunity to do so. (See Pl. Brief at pg. 9.) In response to an improper, hypothetical question posed by Plaintiff's counsel, Dr. Lichtenstein testified that under the circumstances counsel described – i.e., if the doctor were to review the Plaintiff on the date of the deposition and Plaintiff had documents showing he had been asymptomatic since his diagnosis – he would "probably" qualify Plaintiff for the Police Cadet Corps. (See Fleming Decl., Ex. "P" - Lichtenstein Depo at pp. 78:15-79:13.) This is hardly an admission that Dr. Lichtenstein would not disqualify Plaintiff if he "had to make the same decision again today." (See Pl. Brief at pg. 9.) In other words, Dr. Lichtenstein stated that, after enough time had passed, if Plaintiff was asymptomatic, he would qualify him for the position. His answer is completely consistent with his testimony that an insufficient amount of time had passed since Plaintiff's diagnosis to safely qualify him for the job. Notably, the record evidence submitted by Defendant in support of its summary judgment motion shows that Dr. Lichtenstein has qualified candidates with MS before and after Plaintiff's application. (See Lichtenstein Decl., at ¶¶ 56-69 and Ex. "D" – Candidate Review Forms; see also Fleming Decl., Ex. "P" – Lichtenstein Depo. at pp. 41:19-23, 43:8-13.)

As Plaintiff cannot rebut Defendant's basis for asserting a "direct threat" defense, Plaintiff is also unable to satisfy his *prima facie* burden. Therefore, not only is he not entitled to summary judgment on his claims, his claims are also ripe for dismissal at this stage of the litigation without the need for trial.

# CONCLUSION

For the reasons set forth above and for the reasons set forth in Defendant's Motion for Summary Judgment, Defendant respectfully requests that the Court deny Plaintiff's motion for summary judgment on the issue of liability and, grant Defendant summary judgment on all of Plaintiff's claims, dismiss Plaintiff's action in its entirety, with prejudice, enter a judgment for Defendant and grant Defendant costs, fees, and disbursements together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 29, 2016

**ZACHARY W. CARTER**
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street, Room 2-122
New York, New York 10007
(212) 356-2471
mfleming@law.nyc.gov

By:    /s/ Michael F. Fleming
Michael F. Fleming
Assistant Corporation Counsel