```
UNITED STATES DISTRICT COURT:
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RANDY UMANZOR,                                              :
                                                            :
                          Plaintiff,                        :
                                                            :           14-CV-9850 (VSB)
               -v-                                          :
                                                            :           **OPINION & ORDER**
                                                            :
NEW YORK CITY POLICE DEPARTMENT,                            :
                                                            :
                          Defendant.                        :
                                                            :
------------------------------------------------------------X
```

Appearances:

Walker G. Harman, Jr.
Edgar M. Rivera
The Harman Firm PC
New York, New York
*Counsel for Plaintiff*

Joseph D. Lockinger
Kyle C. Bruno
New York City Law Department
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Randy Umanzor brings this action under the Americans with Disabilities Act of 1990 ("ADA"), as amended 42 U.S.C. § 12101 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, against the New York City Police Department ("NYPD"),[1] alleging claims resulting from the NYPD's decision to reject his

---

[1] Defendant argues that this action should be dismissed because the NYPD is a non-suable entity. (Def.'s Mem. 22.) Although the NYPD is clearly a non-suable entity, *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Makenin v. City of New York*, 53 F. Supp. 3d 676, 689 (S.D.N.Y. 2014), for the purpose of deciding the instant motions for summary judgment I will construe Plaintiff's claims as being brought against the City of New York, without prejudice to any arguments that the City of New York may wish to assert, *see Blanton v. City of New York*, No. 12 Civ. 844(DAB)(GWG), 2012 WL 6634177, at *3 (S.D.N.Y Dec. 20, 2012) ("[W]e treat his claims against [the NYPD] as against the City of New York because 'the N.Y.P.D. is a nonsuable agency of the City.'"

application to its Police Cadet Corps after discovering that Plaintiff had been diagnosed with multiple sclerosis ("MS"). Before me are Plaintiff's motion for partial summary judgment, (Doc. 59), and Defendant's motion for summary judgment, (Doc. 55). Because I find that issues of fact exist that preclude summary judgment for either party, both motions are DENIED.

## I. Background[2]

The NYPD is an agency of the City of New York ("City") responsible for "preserving the public peace, preventing crime, suppressing riots, mobs and insurrections, dispersing unlawful or dangerous assemblages, protecting the rights of persons and property, guarding the public health, preserving order, providing proper police attendance at fires, enforcing and preventing the violation of all laws and ordinances in force in the city and arresting all persons guilty of violating any law or ordinance, among other duties." (Pl.'s Response 56.1 ¶ 3.)[3] It "operates as a para-military organization and relies on the fitness, competence and preparedness of its membership to ensure its ability to carry out its duties and responsibilities." (*Id*. ¶ 5.) In furtherance of their duties, it is essential that police officers be able to perform certain tasks, which include various physical activities in a variety of environmental conditions. (*Id.* ¶¶ 7–8.)

"The NYPD Police Cadet Corps is a collegiate police apprenticeship program that aims

---

(quoting *Jenkins*, 478 F.3d at 93 n.19)); *Josey v. N.Y.C. Police Dep't*, No. 07 Civ. 6420(SHS), 2008 WL 2676620, at *1 & n.1 (S.D.N.Y. July 7, 2008) (substituting the City of New York as defendant in place of the NYPD). In these circumstances "[t]ypically the Court would grant a dismissal with leave for plaintiff to amend his complaint to properly name either New York City or the New York City Transit Authority" when amendment would not be futile. *Brennan v. N.Y.C. Police Dep't*, No. 93 CIV. 8461(BSJ), 1997 WL 811543, at *3 (S.D.N.Y. May 27, 1997), *aff'd sub nom.*, 141 F.3d 1151 (2d Cir. 1998). Because Plaintiff has sufficiently alleged a claim under the ADA, I grant plaintiff leave to amend his Complaint to include the City of New York as a defendant within thirty (30) days of issuance of this opinion. *See Morris v. N.Y.C. Police Dep't*, 59 F. App'x 421, 423 (2d Cir. 2003) (finding that plaintiff should be afforded the opportunity to amend the Complaint to name the City of New York as a defendant when the plaintiff had made allegations that sufficiently served as a basis for liability). "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, dated April 1, 2016. (Doc. 56.)

[2] The facts in this section are undisputed unless otherwise noted.

[3] "Pl.'s Response 56.1" refers to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts Under Local Civil Rule 56.1, dated April 29, 2016. (Doc. 68.)

2

towards integrating police officers, with completed baccalaureate degrees, into the rank and file members of the New York City Police Department." (*Id.* ¶ 9.) To be accepted into the program, applicants must meet certain minimum educational requirements and pass a candidate screening process which "includes a medical and a psychological screening and a series of background investigations." (*Id.* ¶¶ 9, 14–15, 17.) The medical screening process consists of a series of physical tests as well as completion by the applicant, and a review by representatives of the NYPD, of the applicant's medical questionnaire. (*Id.* ¶¶ 18, 21.) The medical screening process is overseen by the NYPD's deputy chief surgeon, Dr. David Lichtenstein. (*Id.* ¶ 19.)

The questionnaire states that applicants can be disqualified for failure to fill out the form honestly. (*Id.* ¶ 23.) An applicant may also be asked to provide additional documentation related to the questionnaire, and if asked, the applicant is again informed that failure to provide the requested documents and information may result in disqualification. (*Id.* ¶¶ 25, 29.)

In 2012, Plaintiff enrolled at John Jay College of Criminal Justice, and graduated in May 2015 with a degree in Criminal Justice. (Def.'s Response 56.1 ¶¶ 2–3.)[4] Plaintiff was formally diagnosed with MS, a neurological disorder that affects the central nervous system, in May 2013. (*Id.* ¶¶ 4–5; Pl.'s Response 56.1 ¶ 85.) The onset of MS can be abrupt or insidious, and the symptoms are extremely varied. (Pl.'s Response 56.1 ¶ 39.) Furthermore, many clinical indicators for MS are only observable by monitoring an individual's condition over a number of years. (*Id.* ¶ 51.)

Although Plaintiff was first formally diagnosed in May 2013, he began experiencing "weakness and numbness" in his body in January 2013. (*Id.* ¶ 58.) As a result, he took medical

---

[4] "Def.'s Response 56.1" refers to Defendant's Response to Plaintiff's Statement of Undisputed Material Facts Under Local Civil Rule 56.1, dated April 29, 2016. (Doc. 66.)

leave from his job as a sales associate. (*Id.* ¶ 59.) Plaintiff checked himself in to a hospital on February 1, 2013. (*Id.* ¶ 61.) Between February and May 2013, Plaintiff began to experience "minor tingling" in his hand and "numbness" in his left foot, and on April 22, 2013, woke up with a feeling of numbness in his feet. (*Id.* ¶¶ 69–70.)

Plaintiff met with Dr. Kristin Babinski, a neurologist, for the first time on April 25, 2013. (*Id.* ¶ 71.) In her clinical notes from that visit, Dr. Babinski indicated that, in addition to the previously mentioned symptoms, Plaintiff had experienced difficulty walking prior to his February hospitalization. (*Id.* ¶ 77.) Dr. Babinski prescribed a steroid medication, (*id.* ¶ 80), and later prescribed Tecfidera, (*id.* ¶ 83). After taking Tecfidera, but before his next appointment with Dr. Babinski in September 2013, Plaintiff experienced tingling in two fingers on his left hand. (*Id.* ¶¶ 86, 88.) On March 28, 2014, Plaintiff had another consult with Dr. Babinski, for which Dr. Babinski created clinical notes stating that Plaintiff's fingers were "STILL numb." (*Id.* ¶¶ 92, 94.) Dr. Babinski also noted that Plaintiff had reported severe fatigue, lightheadedness, a terrible memory, and difficulties in school. (*Id.* ¶¶ 95–98.)[5] At the March 28 visit, Dr. Babinski also prescribed Plaintiff Vyvanse and scheduled MRIs. (*Id.* ¶¶ 99–100.) Plaintiff was seen again by Dr. Babinski on May 23, 2014. (*Id.* ¶ 104.)

On February 17, 2014, Plaintiff applied to the NYPD's Police Cadet Corps, (Def.'s Response 56.1 ¶ 6; Pl.'s Response 56.1 ¶ 107), and on April 8, 2014, reported to the NYPD for a medical examination, (Def.'s Response 56.1 ¶ 7; Pl.'s Response 56.1 ¶ 109). Plaintiff underwent a series of physical tests and submitted a medical questionnaire, in which he indicated that he had MS. (Def.'s Response 56.1 ¶ 8; Pl.'s Response 56.1 ¶¶ 110–11.) Plaintiff was then placed

---

[5] The parties disagree about whether these symptoms were related to Plaintiff's MS. (Pl.'s Response 56.1 ¶¶ 95–98.)

4

"on review"[6] and asked to provide his medical records as well as a letter from his doctor regarding his MS. (Def.'s Response 56.1 ¶ 9; Pl.'s Response 56.1 ¶ 115.) Plaintiff did not indicate in his medical questionnaire that he had taken steroids, that he receives Vitamin B12 injections, or that he takes Vitamin D. (Pl.'s Response 56.1 ¶¶ 113–14.)

Plaintiff requested records and a doctor's note from Dr. Babinski, but did not review these materials when he received them from the doctor's assistant. (*Id.* ¶ 117.) Plaintiff then submitted the medical records, along with a letter from Dr. Babinski, to the NYPD on April 15, 2014. (Def.'s Response 56.1 ¶ 10; Pl.'s Response 56.1 ¶¶ 118–21.) The letter from Dr. Babinski stated that Plaintiff was "medically stable for entry into the NYPD as a cadet" and that his neurological exam was "normal except for mild sensory loss in the first two fingers on the left hand." (Pl.'s Response 56.1 ¶¶ 102, 121.) The parties agree that certain of Plaintiff's medical records were not submitted to the NYPD, (*id.* ¶¶ 72, 74, 79, 93, 127, 142–43); however, they disagree as to whether this was intentional, (*see* Def.'s Mem. 8; Pl.'s Opp. 8–9).[7]

Dr. Lichtenstein reviewed the records that Plaintiff submitted and ultimately disqualified him. (Def.'s Response 56.1 ¶¶ 11–12.) Dr. Lichtenstein's chief concern with Plaintiff's medical history in his application was the brief period of time that had elapsed between his MS diagnosis and the date that he applied to the Police Cadet Corps. (Pl.'s Response 56.1 ¶ 129.)

---

[6] According to Defendant, "on review" is the "process of asking a candidate to submit additional medical documentation." (Pl.'s Response 56.1 ¶ 26.)

[7] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated April 29, 2016. (Doc. 72.)

5

## II. Procedural History

Plaintiff commenced the instant action by filing a complaint on December 12, 2014 ("Complaint"), (Doc. 1), and Defendant filed an answer on February 26, 2015, (Doc. 6). On August 6, 2015, Plaintiff filed a letter requesting a pre-motion conference in anticipation of filing a motion for partial summary judgment, (Doc. 16), and I denied his request, noting that I would address any motion for summary judgment when discovery was complete, (Doc. 18). On October 5, 2015, Plaintiff filed another letter requesting a pre-motion conference related to his anticipated motion for partial summary judgment, (Doc. 24), and on October 9, 2015, Defendant responded, indicating that it intended to cross-move for summary judgment, (Doc. 27). On December 17, 2015, after resolving certain discovery disputes, I held a conference during which I set a briefing schedule for the parties' cross-motions for summary judgment. (Doc. 41.) After granting an extension request, (Doc. 52), on April 1, 2016, Defendant filed its motion for summary judgment, (Docs. 55–58), and Plaintiff filed his motion for partial summary judgment, (Docs. 59–60, 62). On April 29, 2016, both Plaintiff, (Docs. 68, 72–75), and Defendant, (Docs. 65–67), filed their oppositions. After a brief extension, (Doc. 77), Plaintiff filed his reply on May 20, 2016, (Docs. 79–81), as did Defendant, (Doc. 78).

## III. Legal Standard

### A. *Summary Judgment*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citations and

internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### B. *Americans with Disabilities Act*

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Claims brought pursuant to the ADA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Under this framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is pretext." *Id.*

To establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Id.* (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)). The burden on a plaintiff to establish a prima facie case is *de minimis*. *See McDonnell v. Schindler Elevator Corp.*, No. 12-CV-4614 (VEC), 2014 WL 3512772, at *5 (S.D.N.Y. July 16, 2014) (citing *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001)), *aff'd*,

8

618 F. App'x 697 (2d Cir. 2015). Applying this minimal burden, a plaintiff "only needs to demonstrate that she possesses the basic skills necessary for performance of the job." *Sista*, 445 F.3d at 171 (quoting *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)). As the Supreme Court has noted, an individual is "otherwise qualified" if he "is able to meet all of a position's requirements in spite of his handicap." *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998) (quoting *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 n.17 (1987)).

In evaluating whether a plaintiff was "otherwise qualified to perform the essential functions of his job," the ADA's statutory scheme recognizes what is known as the "direct threat defense," which is "meant to be applied in cases alleging discriminatory application of qualification standards." *Sista*, 445 F.3d at 171; *see also Makinen v. City of New York*, 53 F. Supp. 3d 676, 694 (S.D.N.Y. 2014) ("Inextricably intertwined with a plaintiff's burden on th[e] 'otherwise qualified'] element is an employer's potential defense that, because of the employee's actual or perceived disability, he or she constitutes a 'direct threat to themselves or others' and is thereby unqualified for the position." (quoting 42 U.S.C. § 12113(b))). As stated in the ADA:

> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

42 U.S.C. § 12113(a). The ADA further supplies that "'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace," *id.* § 12113(b), meaning "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation," *id.* § 12111(3). Thus, under this defense, when a plaintiff poses "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation, that employee is not otherwise qualified to perform

9

his or her job." *Sista*, 445 F.3d at 170 (internal citation and quotation marks omitted).

Defendants who assert a direct threat defense bear a "heavy burden." *Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 347 (S.D.N.Y. 2010) (quoting *Lockett v. Catalina Channel Express, Inc.*, 496 F.3d 1061, 1066 (9th Cir. 2007)). "In order to be a significant risk, 'the probability of significant harm must be substantial, constituting more than a remote or slightly increased risk.'" *Makinen*, 53 F. Supp. 3d at 694 (quoting *Hatzakos v. Acme Am. Refrigeration, Inc.*, No. 03-CV-5428 (DLI)(VVP), 2007 WL 2020182, at *9 (E.D.N.Y. July 6, 2007)); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 220 (2d Cir. 2001) ("The risk can only be considered when it poses a significant risk, i.e. high probability, of substantial harm; a speculative or remote risk is insufficient." (quoting *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 432 (6th Cir. 1999))). Furthermore, the "'direct threat defense' requires an 'individualized assessment of the employee's present ability to safely perform the essential functions of the job based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence.'" *Sista*, 445 F.3d at 170 (quoting 29 C.F.R. § 1630.2(r)). In conducting the individualized assessment, courts consider factors such as "(1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm." *Id.* (quoting 29 C.F.R. § 1630.2(r)). Further, in order to survive summary judgment, a defendant must "present the court with objective, medical evidence—such as reliable medical guidelines, literature, or expert testimony—to establish that their direct threat assessment was reasonable." *Doe*, 682 F. Supp. 2d at 347.

"If the plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate reason for the adverse employment action 'which, if believed by the trier of fact, would support a

finding that unlawful discrimination was not the cause of the employment action.'" *Schindler Elevator*, 2014 WL 3512772, at *6 (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)). "If the defendant proffers such a reason the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)). In other words, the plaintiff must then "demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

## IV.  **Discussion**

Defendant moves for summary judgment on essentially two grounds: first, that Plaintiff cannot establish that he was "otherwise qualified" for the position and, relatedly, that the direct threat defense applies. (*See* Def.'s Mem. 3–17.)[8] Plaintiff, in turn, moves for partial summary judgment on liability, arguing that (1) he has established a prima facie case of disability discrimination, and (2) Defendant cannot proffer a legitimate, non-discriminatory reason for its refusal to hire Plaintiff. (*See* Pl.'s Mem. 5–10.)[9]

With respect to Plaintiff's prima facie case, Defendant does not appear to dispute the first, second, and fourth elements—that the NYPD, through the City of New York, is subject to

---

[8] In addition to the arguments outlined above, Defendant also argues that (1) Plaintiff's damages should be limited to the back pay he could have accrued up until the date that his other disqualifying omissions were discovered by the City, (Def.'s Mem. 17–21), and (2) Plaintiff's punitive damages claim should be dismissed, (*id.* at 21–22). Plaintiff withdrew his request for punitive damages. (Pl.'s Opp. 24.) With respect to Defendant's argument that Plaintiff's damages should be limited to back pay, for reasons stated below, I deny Defendant's motion because of the material disputes surrounding the allegedly "disqualifying" omissions. "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated April 29, 2016. (Doc. 72.)

[9] "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in Support of his Motion for Partial Summary Judgment, dated April 1, 2016. (Doc. 62.)

11

the ADA, that Plaintiff was disabled within the meaning of the ADA, and that Plaintiff suffered an adverse employment action because of his disability. (*See generally* Def.'s Opp. 3–16.)[10] Rather, Defendant characterizes the "sole factual and legal issue at the heart of this dispute" as related to "the NYPD's determination that Plaintiff was not qualified." (*Id.* at 1.) Indeed, Plaintiff and Defendant both move for summary judgment on this identical question—whether Plaintiff, aside from his disability, was "otherwise qualified to perform the essential functions of [the] job," *Sista*, 445 F.3d at 169 (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)), a question that is "[i]nextricably intertwined" with whether Plaintiff's actual or perceived disability constitutes a "direct threat" to himself or others, *Makinen*, 53 F. Supp. 3d at 694 (quoting 42 U.S.C. § 12113(b)).

The parties do not contest the essential functions of a police officer. (*See* Pl.'s Response 56.1 ¶¶ 7–8.) These include, among other things, running after fleeing suspects, climbing up stairs, gripping persons to prevent escape, detecting odors caused by smoke or gas leaks, being physically active for prolonged periods of time, and intervening in ongoing criminal activity. (*See id.*) Plaintiff lacked sufficient information to confirm or deny whether, in screening candidates for the Police Cadet Corps, the NYPD applies the same processes and qualification standards that it applies for Police Officer candidates. (*See id.* ¶ 16.) Moreover, Defendant does not dispute that individuals with MS are potentially qualified to perform the essential functions of a police officer—in other words, this condition did not automatically disqualify him as an applicant—and acknowledges that Dr. Lichtenstein has qualified individuals with MS for appointment to the NYPD in the past. (*See id.* ¶ 55 (stating that Plaintiff "lacks sufficient

---

[10] "Def.'s Opp." refers to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, dated April 29, 2016. (Doc. 65.)

information to deny or affirm" that Dr. Lichtenstein has "qualified two individuals with MS for appointment as NYPD police officers" in the past year).)

At issue here is whether Plaintiff, at the time of his disqualification, was able to perform the essential functions of police work. In this vein, to prevail on a motion for summary judgment, Defendant must show *either* that Plaintiff was not "otherwise qualified" at the time of his disqualification, *or* that Plaintiff's disability constituted a direct threat as determined by an individualized, reasonable assessment based on current medical knowledge, the best available evidence, or both; Plaintiff, in turn, must show that there is no genuine dispute of material fact as to *both* of these questions. *See Makinen*, 53 F. Supp. 3d at 695. Each party has failed to meet their respective burdens; therefore, I find that there are genuine disputes of material fact as to both issues, and summary judgment on these claims is denied.

### A. *Defendant's Motion for Summary Judgment*

Defendant contends that Plaintiff was not "otherwise qualified" for the position of a Police Cadet because Plaintiff failed to (1) provide the NYPD with all of the medical records requested during the candidate screening process, and (2) disclose certain information on the medical questionnaire, disqualifying him from serving. (*See* Def.'s Mem. 6–10.) Defendant further argues that because Plaintiff had been diagnosed with, and began treatment for, MS in 2013—only the year before he applied to the NYPD—he had not been asymptomatic for a period long enough to determine his likelihood of relapse. (*See id.* at 1, 11–17.) Thus, Defendant claims that the direct threat defense is satisfied. (*See id.*) Specifically, Defendant explains that Dr. Lichtenstein's examination—the nature and extent of which is undisputed—fulfills the requirement of an individualized assessment based on reasonable medical judgment and, additionally, that Plaintiff has not met his burden of contesting the reasonableness of

Dr. Lichtenstein's ultimate determination. (*See* Def.'s Reply 5–8.)[11]

However, Defendant's first position rests on disputed facts surrounding whether Plaintiff intended to omit the relevant medical information and/or whether the omitted information ultimately would have impacted Dr. Lichtenstein's decision. Defendant responds to Plaintiff's assertions that he did not intentionally misrepresent any facts on his application, (Pl.'s Opp. 7–13; Pl.'s Response 56.1 ¶¶ 113–14, 145–46), by alleging, in essence, that Plaintiff is lying or offering claims that are not believable, (Def.'s Reply 3–4, 8). Plaintiff testified during his deposition that he did not review any of the records sent to him by Dr. Babinski's office, (Pl.'s Response 56.1 ¶ 117), and stated that he "lack[ed] sufficient information to affirm or deny" whether the records submitted to the NYPD represented a complete version of his file as maintained by Dr. Babinski, (*id.* ¶ 126). Although Plaintiff's application did state that "[t]he undersigned Applicant . . . states that it represents a true account of my medical history with the understanding that any omission or false statements may result in my disqualification," (*see* Lichtenstein Decl. Ex. E),[12] the question of Plaintiff's intent and the sufficiency of Dr. Lichtenstein's examination are questions of fact. These are credibility determinations better made by a jury. *See Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 261 (S.D.N.Y. 2009) (denying summary judgment with respect to an ADA claim where the case "involve[d] an assessment of credibility and the resolution of competing inferences from the disputed facts," because "[n]either is for the Court to decide"); *Quintero v. Rite Aid of N.Y., Inc.*, No. 09 Civ. 6084(JLC), 2011 WL 5529818, at *17 (S.D.N.Y. Nov. 10, 2011) ("Given the conflicting

---

[11] "Def.'s Reply" refers to Defendant's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment, dated May 20, 2016. (Doc. 78.)

[12] "Lichtenstein Decl." refers to the Declaration of David I. Lichtenstein, M.D., NYPD Deputy Chief Surgeon, in Support of Defendant's Motion for Summary Judgment, dated March 31, 2016. (Doc. 57.)

versions of events, the Court is called upon to weigh the parties' evidence and make credibility determinations, which 'are jury functions, not those of a judge.'" (quoting *Anderson*, 477 U.S. at 255)); *see also* N.Y. Civ. Serv. Law § 50(4)(f) ("The state civil service department and municipal commissions may refuse to examine an applicant, or after examination to certify an eligible . . . who has intentionally made a false statement of any material fact in his application . . . .").

Further, in response to Plaintiff's argument that he was generally fit for service, (Pl.'s Opp. 4–7), Defendant essentially argues that Plaintiff's affidavit is self-serving and contradictory, and that Dr. Babinski's affidavit is conclusory, (Def.'s Reply 2–3). This similarly goes to the weight of the evidence to be put before the jury. *See Makinen*, 53 F. Supp. 3d at 696 (finding that the defendant's argument that the plaintiff's expert misapplied diagnostic tests to the plaintiff went to the weight of the evidence, not admissibility, and should be explored before a jury on cross examination). As stated above, Dr. Lichtenstein has qualified individuals with MS in the past, (*see* Pl.'s Response 56.1 ¶ 55), and thus there is no evidence that Plaintiff would have been rejected had the information been produced.

Similarly, summary judgment on Defendant's direct threat defense cannot be granted because there are disputed issues of material fact concerning whether, at the time of Dr. Lichtenstein's determination, Plaintiff posed "a significant risk to the health or safety of others" based on a "reasonable medical judgment." *Sista*, 445 F.3d at 170 (internal quotation marks omitted). Notably, Dr. Babinski sharply disagrees that such an assessment was reasonable, (*see* Babinski Aff. ¶¶ 14–15),[13] which creates a genuine dispute of fact, *see Nelson v. City of New York*, No. 11 Civ. 2732(JPO), 2013 WL 4437224, at *11 (S.D.N.Y. Aug. 19,

---

[13] "Babinski Aff." refers to the Affidavit of Kristen Babinski, dated April 1, 2016. (Doc. 75.)

2013) ("Nonetheless, in light of Plaintiff's personal therapist's determination that Plaintiff could tolerate the stress of the job, a genuine dispute of fact remains as to whether Plaintiff could return to the NYPD and perform the functions of a police officer."). Defendant's description of the documents that Dr. Babinski relies upon in her affidavit as being of "questionable veracity and little relevance," (Def.'s Reply 7), while going to the weight of the evidence, does not eliminate the dispute. Indeed, Plaintiff raises disputes with respect to several facts surrounding the basis of Dr. Lichtenstein's determination, including whether Dr. Babinski's letter, sent to Dr. Lichtenstein as part of Plaintiff's Police Cadet Corps application, was an assessment of Plaintiff's ability to perform the essential functions of a police officer; whether Dr. Babinski's letter reflected an accurate diagnosis; whether Dr. Lichtenstein considered that letter; and what Dr. Lichtenstein's determination was ultimately based on, to list a few. (*See, e.g.*, Pl.'s Response 56.1 ¶¶ 122–24.) For these reasons, Defendant's motion for summary judgment with respect to whether Plaintiff was "otherwise qualified," including whether Plaintiff represented a "direct threat," is DENIED.

**B.** *Plaintiff's Motion for Partial Summary Judgment*

For many of the reasons stated above in connection with my denial of Defendant's motion for summary judgment, Plaintiff cannot establish, based on the undisputed material facts, that the direct threat defense *does not* apply, and thus summary judgment in favor of Plaintiff cannot be granted. In fact, Plaintiff's own opposition to Defendant's motion for summary judgment on this issue states that "[t]here is a dispute of fact as to whether Plaintiff posed a high probability of substantial harm to himself and others." (Pl.'s Opp. 19.) Such a concession, taken on its own, dictates that Plaintiff's motion for partial summary judgment must be denied.

Whether Dr. Lichtenstein's reliance on the cited medical journals and other materials

16

constituted an individualized assessment—leading to a reasonable medical judgment based on the most current medical knowledge and/or the best available objective evidence—is similarly disputed. (*See* Def.'s Response 56.1 ¶¶ 12–13 (disputing that Dr. Lichtenstein disqualified Plaintiff because of MS, and explaining that the doctor determined that not enough time had elapsed between Plaintiff's diagnosis and his Police Cadet Corps application, and that based on this short time period Dr. Lichtenstein could not safely conclude that the MS would remain stable or that the maintenance therapy would be effective); *id.* ¶ 14 (disputing the amount of time Dr. Lichtenstein believed was required between diagnosis and the point at which there is certainty that a patient's MS would not be debilitating); *id.* ¶ 17 (disputing Plaintiff's statement that the NYPD did not request or perform any exams, and thus never physically and independently assessed Plaintiff's conditions, by explaining that Plaintiff underwent a medical screening and submitted an applicant medical questionnaire, which was reviewed by Dr. Lichtenstein along with Plaintiff's medical records and Dr. Babinski's letter).) As a result, Plaintiff's motion for partial summary judgment is also DENIED.

## V.     Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is DENIED and Plaintiff's motion for partial summary judgment is likewise DENIED.

I grant Plaintiff leave to amend the Complaint to include the City of New York as Defendant within thirty (30) days of issuance of this opinion. The Clerk of Court is directed to terminate the pending motions. (Docs. 55, 59.)

The parties are directed to appear for a post-discovery conference on March 1, 2018 at 10:30 a.m. in Courtroom 518 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. The parties are further directed to submit a joint letter on or before February 22, 2018, setting forth proposed trial dates and anticipated length of trial.

SO ORDERED.

Dated: February 12, 2018
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge