UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
RANDY UMANZOR,

          *Plaintiff,*            **14 CV 9850**

   *v.*

CITY OF NEW YORK,           **FIRST AMENDED COMPLAINT**

          *Defendant.*
------------------------------------------------------------------------×

Plaintiff Randy Umanzor, by his counsel, The Harman Firm, LLP, alleges for his First Amended Complaint against Defendant City of New York (the "City") as follows:

## PRELIMINARY STATEMENT

1. Mr. Umanzor seeks damages and costs against Defendant for discriminating against him based on his perceived disability by denying him employment based on the false perception that he suffers from a disability arising from multiple sclerosis (MS), in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq.*

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

2. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the ADA.

3. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

5. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a Right-to-Sue letter dated December 4, 2014, relating to the discriminatory acts described in this Complaint. This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

6. Plaintiff respectfully requests a trial before a jury.

## PARTIES

7. Mr. Umanzor, at all times relevant hereto, was and is a resident of Richmond County in the State of New York.

8. Upon information and belief, at all times relevant hereto, the City was and is a metropolitan municipality with its headquarters located at City Hall Park, New York, New York 10007 in New York County. Upon information and belief, at all times relevant hereto, the New York City Police Department (NYPD) was and is an agency of the City with its headquarters located at 1 Police Plaza, New York, New York 10007 in New York County.

## STATEMENT OF FACTS

9. Plaintiff Randy Umanzor is a 24 year old male.

10. In and around the Spring 2012, Mr. Umanzor enrolled at John Jay College of Criminal Justice with the intention of graduating with a degree in Criminal Justice and applying to the NYPD police academy.

11. It has been Mr. Umanzor's long-time dream to become a police officer in the NYPD.

12. Mr. Umanzor was diagnosed with MS in 2013.

13. After this diagnosis, Mr. Umanzor doubled his effort to become a police officer in the NYPD. Mr. Umanzor began to lift weights and exercise regularly to train himself for the job. He is in excellent physical shape, and is mentally sharp and fit for the duties of a police officer.

14. Mr. Umanzor is still a student in good standing at the John Jay College of Criminal Justice and is pursuing a major in criminal justice and a minor in criminology with the sole aim to become a police officer in the NYPD.

15. To that end, in and around February 2014, Mr. Umanzor applied for a "cadet" position with the NYPD.

16. The cadet program offers college students the opportunity to learn what it's like to work for the NYPD. Cadets learn, *inter alia*, management techniques, computer skills, and problem-solving techniques in addition to professional training. The program offers a competitive salary, generous tuition assistance, and a fast-track into the NYPD police academy. Upon successful completion of the program, cadets may take the officer exam.

17. On or about April 8, 2014, as part of his application for the cadet position, Mr. Umanzor reported to the NYPD for a medical examination.

18. After passing the physical examination, Mr. Umanzor was required to fill out medical forms on which he disclosed that he had been diagnosed with MS.

19. After viewing Mr. Umanzor's medical forms, the NYPD requested that Mr. Umanzor provide medical documentation regarding his MS. Mr. Umanzor promptly did so, including a letter from his doctor stating that his MS would not interfere with his ability to perform the duties of a cadet.

20. Mr. Umanzor does not have any significant symptoms of MS, and certainly none whatsoever that could impact or impede his ability to perform the duties of a cadet or police officer.

21. Nonetheless, on or about May 20, 2014, Mr. Umanzor received a notice of medical disqualification from the NYPD, which summarily rejected him from the cadet program. The notice of medical disqualification cited only "Multiple Sclerosis" as the reason for his rejection.

22. The NYPD never requested or performed any additional exams on Mr. Umanzor and never assessed the symptoms, if any, of Mr. Umanzor's MS.

23. On or about June 18, 2014, Mr. Umanzor appealed this decision as instructed on his notice of medical disqualification.

24. On or about June 27, 2014, Mr. Umanzor's appeal was denied, on the grounds that he was purportedly not entitled to the appeal process as described on his notice of medical disqualification; the appeal did not go to the merits of whether being diagnosed with MS automatically made him "unqualified" for the cadet position.

25. Mr. Umanzor attempted to appeal this decision as well, but the NYPD once more summarily denied him the right to appeal.

26. Mr. Umanzor is currently unemployed.

27. Mr. Umanzor is qualified to be a cadet; however, the NYPD disqualified Mr. Umanzor solely on the perception that he is unable to perform the job duties of a cade or police officer because he has MS.

28. Mr. Umanzor suffered direct and proximate emotional and financial harm as a result of Defendant's conduct. This harm includes, but is not limited to, extreme mental anguish,

emotional distress, humiliation, and damage to Mr. Umanzor's reputation as a person without a disability, and monetary loss including, but not limited to, a sum equal to the difference between the wages, benefits and perquisites Mr. Umanzor's would have earned with the NYPD and the wages, benefits and perquisites he earned after the NYPD refused to hire him.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Perceived Disability Discrimination in Violation of the ADA**

29. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 28 with the same force as though separately alleged herein.

30. The ADA mandates that no employer discriminate against a qualified individual on the basis of disability, whether actual or perceived, in regard to job application procedures.

31. Defendant discriminated against Plaintiff by disqualifying him for the cadet position solely because of his perceived disability.

32. As a direct and proximate consequence of Defendant's illegal discrimination, Plaintiff has been denied wages, salary, employment benefits, professional advancement, and actual monetary losses, and has suffered and continues to suffer substantial non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

33. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

### SECOND CAUSE OF ACTION
**Perceived Disability Discrimination in Violation of the NYCHRL**

34. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 33 with the same force as though separately alleged herein.

35. NYCHRL § 8-107 mandates that no employer refuse to hire any person because of an actual or perceived disability.

36. Defendant discriminated against Plaintiff by disqualifying him for the cadet position solely because of his perceived disability.

37. As a direct and proximate consequence of Defendant's illegal discrimination, Plaintiff has been denied wages, salary, employment benefits, professional advancement, and actual monetary losses, and has suffered and continues to suffer substantial non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

38. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial; and

C. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 6, 2018

          By:    s/Walker G. Harman, Jr.
                  Walker G. Harman, Jr. [WH-8044]
                  Edgar M. Rivera [ER-1378]
                  THE HARMAN FIRM, LLP
                  234 Fifth Avenue, 4th Floor, #409
                  New York, NY 10001
                  (212) 425-2600
                  wharman@theharmanfirm.com
                  erivera@theharmanfirm.com

                  *Attorneys for Plaintiff*